UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THUNDER BASIN COAL COMPANY, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:12CV231 CDP |
| ZURICH AMERICAN INSURANCE COMPANY, et al., | ) ) ) ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Plaintiff Thunder Basin Coal Company, L.L.C. seeks a declaratory judgment that defendant National Union Fire Insurance Company of Pittsburgh is required to defend and indemnify it against a separate lawsuit, under an "additional insured" provision of a commercial umbrella policy. Thunder Basin was sued in the United States District Court for the District of Wyoming for injuries suffered by two individuals when a crane collapsed at its Black Thunder Mine. National Union moves for judgment on the pleadings, arguing, among other things, that its policy could only cover Thunder Basin for any vicarious liability, and that vicarious liability is precluded as a matter of law. I conclude that Thunder Basin has not shown that it is entitled to judgment on the pleadings.

## Background

Thunder Basin operates the Black Thunder Mine, located in Wyoming. It entered into a contract with The Industrial Company of Wyoming, Inc. (TIC) for TIC to construct a coal handling railway expansion project. The contract required TIC to obtain primary and excess insurance and to name Thunder Basin as an additional insured. To complete the project, TIC leased a crane and crane operators from Lampson International. One of the cranes used by Lampson collapsed on May 31, 2008, injuring two employees of TIC: Andrew Milonis and Federico Salinas. Milonis then filed suit against Lampson, Earth Work Solutions,[1] and Thunder Basin in the District of Wyoming. Salinas filed suit against Lampson and Earthworks, Inc., and later filed a separate suit against Thunder Basin.

Thunder Basin now seeks an order requiring National Union to defend and indemnify it against these lawsuits as an additional insured under the policy issued to TIC. The National Union insurance policy at issue defines an "insured" as "any person or organization . . . included as an additional insured under Scheduled Underlying Insurance, but not for broader coverage than would be afforded by such Scheduled Underlying Insurance." (Doc. #36-5, at 38). The scheduled underlying insurance in this case is TIC's policy issued by Zurich American Insurance Company. The Zurich policy includes an endorsement that contains the

---

[1] Earth Work Solutions is apparently also known as Earthworks, Inc.

following provisions relevant to coverage for an additional insured:

> A. Section II – Who Is An Insured is amended to include as an insured any person or organization who you are required to add as an additional insured on this policy under a written contract or written agreement.
>
> B. The insurance provided to the additional insured person or organization applies . . . only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>> 1. Your acts or omissions; or
>>
>> 2. The acts or omissions of those acting on your behalf . . . .

(Doc. #36-5, at 18).[2]

In Count VII of the amended complaint, Thunder Basin seeks a declaratory judgment that National Union is obligated to defend and indemnify it in both of the underlying suits. National Union moves for judgment on the pleadings, arguing that Thunder Basin's liability was not caused by TIC's acts or omissions, as required under the Zurich policy.

## Discussion

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010). "The facts pleaded by

---

[2] The terms "you" and "your" in these provisions refer to TIC, the named insured on the policy.

the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). In ruling on a motion for judgment on the pleadings, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record. *Id.*

Thunder Basin brought this case based on diversity jurisdiction under 28 U.S.C. § 1332. "A district court sitting in diversity must apply the conflict of law rules for the state in which it sits." *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). In deciding choice of law questions for insurance cases, Missouri applies § 193 of the Restatement (Second) of Conflict of Laws "[i]f the insurance contract does not specify which state's law applies, or if the policy insures risks located in a state other than Missouri." *Curran Composites, Inc. v. Liberty Mut. Ins. Co.*, 874 F. Supp. 261, 264 (W.D. Mo. 1994). Under § 193, Missouri courts will apply the law of the state where "the principal location of the insured risk" is located, unless another state has a more significant relationship to the transaction and the parties. Restatement (Second) of Conflict of Laws § 193.

In this case, the National Union policy does not specify which state's law applies to its interpretation, and the policy insures risks located outside of

Missouri.[3] When a policy "insure[s] against risks located in several states," each risk is treated as if it was insured under a separate policy. Restatement (Second) of Conflict of Laws § 193 cmt. f. Because the risk at issue in this case involves a single facility located in Wyoming, this court will apply Wyoming law based on Missouri's conflict of law rules.

Under Wyoming law, "[t]he interpretation and construction [of an insurance contract] is done by the court as a matter of law." *Amoco Prod. Co. v. Stauffer Chemical Co. of Wyo.*, 612 P.2d 463, 465 (Wyo. 1980). The Wyoming Supreme Court has set out several tenets for the interpretation of insurance contracts, as follows:

> (1) words must be given their common and ordinary meaning, and courts may not torture policy language to create an ambiguity; (2) the parties' intention, ascertained from the policy language when viewed in the light of what the parties must reasonably have intended, receives primary consideration; (3) the policy must not be construed so strictly as to contradict the policy's general object; (4) courts may not rewrite lawful policy terms; (5) absent ambiguity, courts must enforce the policy according to its terms and not engage in construction; (6) if the policy is ambiguous, courts must construe the contract liberally in favor of the insured and strictly against the insurer.

*Mena v. Safeco Ins. Co.*, 412 F.3d 1159, 1163 (10th Cir. 2005) (citing *Aaron v. State Farm Mut. Auto. Ins. Co.*, 34 P.3d 929, 933 (Wyo. 2001)).

---

[3] The schedule of locations covered by the Zurich policy was not attached to the parties' motions, although at least one of those covered locations is located outside of Missouri: the Black Thunder Mine in Wyoming. Therefore, I find that application of § 193 is appropriate.

*1.     Policy Language*

As required under Wyoming law, the interpretation of this insurance contract must begin with its plain language. The parties offer different interpretations of the relevant portion of the Zurich policy. The pertinent phrase states that insurance is only provided "with respect to *liability* for '*bodily injury*,' 'property damage' or 'personal and advertising injury' caused, in whole or in part, by" the acts or omissions of TIC or those acting on its behalf. The parties dispute whether the emphasis in this phrase is on "liability" or "bodily injury," and they also raise arguments concerning the "in whole or in part" language.

National Union argues that the policy only covers Thunder Basin if it is held vicariously liable for the acts of TIC, and that as a matter of Wyoming law, it cannot be vicariously liable for TIC's acts, so there is no coverage. Thunder Basin, on the other hand, argues that coverage is provided because the plaintiffs in the underlying suits allege that a party acting on behalf of TIC is also alleged to have caused the plaintiffs' bodily injuries.[4] I conclude that the plain language of the policy does not support National Union's interpretation.

As to the dispute between whether "liability" or "bodily injury" is the focus

---

[4] Count VII seeks a declaration that National Union has both a duty to defend and a duty to indemnify under the contract. As in most states, under Wyoming law, the duty to defend is broader than the duty to indemnify. *See, e.g.*, *Great Divide Ins. Co. v. Bitterroot Timberframes of Wyo.*, No. 06-CV-020-WCB, 2006 WL 3933078, at §7 (D. Wyo. Oct. 20, 2006); *Sabins v. Commercial Union Ins. Cos.*, 82 F. Supp. 2d 1270, 1276 (D. Wyo. 2000). The duty to defend exists if a claim in the underlying lawsuit is rationally or potentially covered by the policy. *Great Divide*, 2006 WL 3933078, at *7.

of the first part of this phrase, National Union argues that coverage is only provided for liability caused by the acts or omissions of TIC or those acting on its behalf, such that the policy would only cover Thunder Basin for vicarious liability, which is not permitted under Wyoming law.  To interpret the policy as National Union suggests would essentially eliminate all meaning of the phrase, "for 'bodily injury,' 'property damage' or 'personal and advertising injury.'"  Rather, National Union's interpretation would read, "The insurance provided to the additional insured person or organization applies . . . only with respect to liability . . . caused, in whole or in part, by" the acts or omissions of TIC or those acting on its behalf. Such an interpretation isolates certain parts of the language, rather than reading the policy as a whole, which is impermissible under Wyoming principles of contract interpretation.  *See State ex rel. Arnold v. Ommen*, 201 P.3d 1127, 1138 (Wyo. 2009) (stating that Wyoming courts "interpret contracts a whole, reading each provision in light of all the others to find the plain and ordinary meaning of the words" and "are reluctant to read parts of an insurance contract in isolation").

When reading the clause as a whole, I conclude that the plain language unambiguously does not limit coverage to situations involving vicarious liability. The key term in the contract provision at issue is the "bodily injury" caused by TIC

or those working on its behalf.[5]  National Union's attempt to focus on the term "liability" controverts the plain meaning of the language at issue.[6]  Furthermore, the policy does not contain any specific mention of vicarious liability as a limitation on coverage, and such a restriction could have been written into the policy if the parties had intended to limit coverage in that way.  *See Am. Empire Surplus Lines Ins. Co. v. Crum & Forster Specialty Ins. Co.*, No. Civ. H-06-0004, 2006 WL 1441854, at *7 (S.D. Tex. 2006) (denying to read into the policy an unstated coverage limitation to vicarious liability in the absence of the words "derivative" and "vicarious").

National Union's argument regarding vicarious liability is therefore without merit.  Because I have concluded that the policy provides coverage for bodily injury caused by the insured, rather than liability caused by the insured, National Union's arguments concerning vicarious liability and comparative fault are

---

[5] The parties have cited a number of cases examining the same or similar contract language, which have reached inconsistent results regarding the meaning of this language.  *See, e.g.*, *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011); *Lincoln Gen. Ins. Co. v. Federal Constr., Inc.*, No. 09-C-6087, 2010 WL 4978852 (N.D. Ill. Dec. 2, 2010); *Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, No. 09-1115, 2010 WL 4909600 (E.D. Pa. Nov. 30, 2010).  The parties have tried to distinguish these cases, but no unifying principles may be drawn from the holdings of these cases because all involve factual circumstances different from each other and from the facts presented here, as well as various contract interpretation principles that are not invoked under Wyoming law.

[6] Even if the language is ambiguous, in that the interpretations urged by both parties are plausible readings of the language, Wyoming insurance law mandates that I must construe the language in favor of the insured and strictly against the insurer.  *See Mena*, 412 F.3d at 1163.

irrelevant to this analysis.[7]

Furthermore, the parties raise arguments about another phrase contained in the additional insured provisions of the Zurich policy:  "caused, in whole or in part, by" TIC or those acting on TIC's behalf.  The underlying complaints allege separate acts of negligence performed by Lampson, Earth Works, and Thunder Basin, which together caused the bodily injuries suffered by Milonis and Salinas. Even if – as National Union argues – Thunder Basin will only be held liable for its proportion of fault in the underlying lawsuits, that principle does not preclude coverage under this policy.  By its plain language,  the phrase "caused, in whole or in part," merely requires the named insured or those acting on its behalf to have been at least partially responsible for the injuries alleged by the claimant.  *See, e.g.*, *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp. 2d 242, 256-57 (D. Me. 2011) (holding that inclusion of the "in whole or in part" language "specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured *and* the additional insured"); *Am. Empire*, 2006 WL 1441854, at *7 (holding that an additional insured is entitled to coverage if the complaint potentially alleges a claim based on some

---

[7] Specifically, National Union argues that Wyoming law does not allow a contractor's employee injured on a construction worksite to hold the owner of the worksite vicariously liable for any negligence of the contractor.   Similarly, National Union argues that under Wyoming's comparative fault statute, Thunder Basin will only be held liable for its own negligence, not the negligence of TIC or those acting on its behalf.

conduct by the named insured, despite allegations of wrongful conduct by the additional insured).[8]  Whether Thunder Basin was also negligent does not determine its eligibility for coverage.  Based on the allegations raised in the underlying complaints and in Thunder Basin's complaint in this case, Thunder Basin has raised a plausible argument that it may be liable for injuries caused by the actions of Lampson, which was acting on behalf of TIC.

Alternatively, in its reply brief, National Union argues that Lampson was not actually working on TIC's behalf because it was an independent contractor.  As an initial matter, I need not consider this argument, as it was not raised until the reply brief.  *K.C. 1986 Ltd. P'Ship v. Reade Mfg.*, 472 F.3d 1009, 1018 n.2 (8th Cir. 2007) ("It is well settled that [courts] do not consider arguments raised for the first time in a reply brief.").  However, even if this argument were proper, I do not find that it has merit at this stage of the proceedings.  Wyoming courts have not interpreted the scope of individuals qualifying as "acting on behalf" of the named insured, though some other courts have held that this class is limited to agents of the named insured.  *See, e.g.*, *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589,

---

[8] Thunder Basin correctly points out that National Union has previously made the opposite argument of its position in this case.  In *National Union Fire Insurance Company of Pittsburgh, PA v. NGM Insurance Company*, No. 11-CV-303-JD, 2011 WL 6415484 (D.N.H. Dec. 21, 2011), National Union argued that coverage should be provided for an additional insured when the named insured was performing work for the additional insured when the injury occurred, even though the injured party did not allege that the named insured caused his injuries.  *Id.* at *3. That court agreed with National Union that because the injury could potentially be attributable to the named insured – even though the complaint did not specifically allege any wrongdoing by the named insured – the additional insured was entitled to coverage.  *Id.* at *4-5.

Case: 4:12-cv-00231-CDP Doc. #: 83 Filed: 05/02/13 Page: 11 of 15 PageID #: 2179

593 (5th Cir. 2011). Wyoming law defines agency as "the manifestation of consent by one person to another that the other shall act on his behalf *and* subject to his control and consent." *Krier v. Safeway Stores 46, Inc.*, 943 P.2d 405, 411 (Wyo. 1997) (emphasis in original) (internal quotation marks and citation omitted). This contract requires only the element of acting on behalf of the named insured, not necessarily being subject to its control. However, even if both elements of an agency relationship are required, the facts in this case meet those requirements. In a summary judgment opinion issued in one of the underlying Wyoming district court cases – attached in support of plaintiff's response brief – the court summarized facts relevant to the relationship between TIC and Lampson as follows:

> Without enumerating all details relevant to this project, it is clear that TIC retained exclusive control of the job site; that TIC controlled the lifting operations and the crane operators on site, including in particular the lift operation in which plaintiff Salinas was injured. TIC developed the final lift plans, coordinated operations and supplied rigging crews and iron workers. TIC determined what loads would be lifted and when and where those activities would occur. TIC directed supervision of crane operators on site and controlled when those workers would work or go home. TIC accepted and controlled the engineers supplied by Lampson to TIC pursuant to the lease agreement . . . .

(Doc. #61-2, at 7-8). This recitation of facts demonstrates a substantial level of control by TIC over the work performed by Lampson. National Union is therefore not entitled to judgment on the pleadings on this basis.

- 11 -

Based on the above analysis of the policy language itself, I conclude that Thunder Basin has plead a plausible claim for a declaratory judgment against National Union that it is entitled to coverage as an additional insured under the policy.  Therefore, National Union is not entitled to relief on the basis of the policy language.

2.   *Public Policy*

National Union raises a separate argument that Wyoming public policy precludes a mining company from obtaining indemnity for its own negligence, and thus Thunder Basin may not shift its liability to an insurance company.  Wyoming Statute § 30-1-131 reads as follows:

> (a)   All agreements, covenants or promises contained in . . . any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages for:  (i) death or bodily injury to persons . . . (B) are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence.  This provision shall not affect the validity of any insurance contract . . . .

Wyo. Stat. § 30-1-131.  Thunder Basin argues that the exemption for insurance contracts contained in the statute applies, such that the insurance policy is valid.[9]

---

[9] Thunder Basin also argues that Wyoming courts would not interpret the work being performed by Lampson in this case as "designing, excavating, constructing, improving, or otherwise rendering services in or in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral," as required to fall within coverage of § 30-1-131.  Wyo. Stat. § 30-1-132.  Because I conclude that the insurance exemption adequately resolves the question of coverage in this case, I need not predict how broadly Wyoming courts would construe this phrase in the statute.

Starting with the plain language, this Wyoming statute clearly states that it "shall not affect the validity of any insurance contract." Wyo. Stat. § 30-1-131. An agreement by a subcontractor to indemnify the contractor for any liability or damages is not the same as an agreement to procure insurance. *See, e.g.*, *Zettel v. Paschen Contractors, Inc.*, 427 N.E.2d 189, 192 (Ill. App. Ct. 1981). Had the contract between Thunder Basin and TIC required TIC to indemnify Thunder Basin for any liability or damages, it apparently would be invalidated by § 30-1-131. However, the contract between Thunder Basin and TIC only required TIC to "provide and maintain insurance of the type and amounts set out" in an attached table, and to include Thunder Basin as an additional insured on all policies. (Doc. #55-1, at 9, 20). Therefore, because there was never an agreement that TIC would indemnify Thunder Basin – but would rather list it as an additional insured on its insurance policies – the statute does not preclude coverage for Thunder Basin under the National Union policy.

National Union argues that a Wyoming district court reached the opposite result in *True Oil Co. v. Mid-Continent Cas. Co.*, No. 02-CV-1024 (D. Wyo. Feb. 9, 2005), *aff'd on other grounds*, 173 F. App'x 645 (10th Cir. 2006), holding that this statute precludes a mining company from obtaining additional insured coverage under a contractor's policy. I disagree with National Union's interpretation of that case and its applicability to the facts in this case. In *True Oil*,

the court analyzed a contract that contained both an indemnification clause and a clause requiring the subcontractor to procure insurance. *Id.* at *4-5. The insurance policy at issue stated that it only provided coverage for an additional insured if it was required by a written "insured contract" between the parties. *Id.* at *10. The policy then defined "insured contract" as a contract under which "[the insured] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." *Id.* The court held that the only part of the party's contract that could arguably be considered an "insured contract" was the indemnification provision, and since that was invalidated by § 30-1-131, the contractor was not entitled to coverage under the insurance policy. *Id.* at *56-57.

This case is distinguishable from *True Oil* in several important ways. First, the insurance policy provides coverage for an additional insured for "any person or organization who [the insured] [is] required to add as an additional insured on this policy under a written contract or written agreement." (Doc. #36-5, at 18). As stated above, Thunder Basin and TIC had a written contract providing that TIC was required to add Thunder Basin as an additional insured. Unlike in *True Oil*, there was no requirement of an "insured contract" prior to obtaining coverage, but rather only a "written contract or written agreement," and so Thunder Basin was properly added as an additional insured under the National Union policy. Additionally, there was not an indemnification agreement between the parties here,

as there was in *True Oil*.  Based on other cases that have considered similar statutes in other states, I conclude that Wyoming courts would distinguish between agreement to procure insurance coverage and agreements to indemnify.  *See, e.g.*, *Roy Anderson Corp. v. Transcontinental Ins. Co.*, 358 F. Supp. 2d 553, 566 (S.D. Miss. 2005) (collecting cases).  Because the agreement in this case only contained an agreement to procure insurance and not an agreement to indemnify, § 30-1-131 does not invalidate the agreement between Thunder Basin and TIC.

Construing the complaint in the light most favorable to Thunder Basin, I conclude that it has plead a plausible claim for a declaratory judgment against National Union that it is entitled to coverage as an additional insured under the policy.  Therefore, I will deny National Union's motion for judgment on the pleadings as to Count VII of the first amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant National Union Fire Insurance Company's motion for judgment on the pleadings [#54] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of May, 2013.