UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THUNDER BASIN COAL COMPANY, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| ZURICH AMERICAN INSURANCE COMPANY, et al., | ) ) ) ) |
| Defendants. | ) |

Case No. 4:12CV231 CDP

# **MEMORANDUM AND ORDER**

In this insurance coverage dispute a mine owner seeks to be considered an additional insured on policies issued to one of its contractors. Two workers injured in a crane accident on the property have sued the mine owner in Wyoming. The insurance policies were issued to a contractor who did work on the site before the men were injured. The contractor's policies say they will cover as an additional insured another party with whom the contractor had a "written contract requiring insurance." The mine owner asserts that its construction agreement is such a contract, but the Wyoming court has already ruled that the contractor's work where the men were injured was not performed as part of that agreement, so there can be no coverage on that basis. But I agree that a separate document between the two, called "Terms and Conditions," meets the requirement of a written contract

requiring insurance, so the plaintiff is an additional insured under the policies. Because other issues remain in the case, however, I am not entering judgment at this time.

## Background

Plaintiff Thunder Basin Coal Company L.L.C. operates the Black Thunder Mine located in Wyoming. Thunder Basin built a new facility for transporting coal from the mine. In September of 2007, Thunder Basin hired Earth Works Solutions, Inc. to do some of the work associated with a rail line extension of a rail line as part of the new facility. The written construction agreement required Earth Works to name Thunder Basin as an additional insured on its primary and excess liability insurance policies. In November 2007, Earth Works signed a Thunder Basin document called "Terms and Conditions," which also contained an insurance provision. Earth Works obtained its commercial general liability (CGL) policy from defendant Travelers Indemnity Insurance Company of America, and obtained the commercial excess liability insurance policy from defendant Travelers Property and Casual Company of America.[1] Thunder Basin asserts that it is an additional insured under these policies and that Travelers must defend and indemnify it in two personal injury lawsuits filed in Wyoming.

---

[1] As have the parties, I will refer to the two defendants collectively as Travelers.

During the construction project, Thunder Basin also asked Earth Works to prepare the ground at a site where a crane would be used, referred to as the Bent 4 pad.  It is undisputed that this work was not within the scope of work contemplated by the original construction agreement, but the parties disagree as to whether the work was nevertheless done as part of that agreement, either under a later-issued change order or an amended contract.  Earth Works did the Bent 4 pad work during March and April 2008.  A crane being used at the site collapsed on May 31, 2008, injuring workers Andrew Milonis and Federico Salinas.  Milonis filed suit in Wyoming against Earth Works, Thunder Basin, and the company that owned the crane.  Salinas also sued Thunder Basin.  Both suits allege that Thunder Basin contracted with Earth Works to construct the Bent 4 pad and that the negligent construction of the pad caused the plaintiffs' injuries.  These are the suits for which Thunder Basin seeks coverage as an additional insured.

The United States District Court for the District of Wyoming, where the *Milonis* case is pending, has ruled that the construction agreement between Thunder Basin and Earth Works did not give rise to any duties by Earth Works to the *Milonis* plaintiffs, because the construction agreement, as a matter of contract interpretation, did not apply to the work Earth Works' did on the Bent 4 pad.[2]

---

[2] It reached a similar conclusion with regard to *Salinas*, but its ruling was in a separate case to which Thunder Basin was not a party.

- 3 -

*Palmer ex rel. Milonis v. Lampson Int'l, LLC*, No. 11-CV-199-J, slip op. (D. Wyo. Oct. 15, 2011).

*The Insurance Policies*

Several provisions of the policies Travelers issued to Earth Works relate to coverage for an additional insured. The CGL policy contains an endorsement covering additional insureds:

> 1. WHO IS AN INSURED – (Section II) is amended *to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured* on this Coverage Part, but:
>
>     a) Only with respect to liability for "bodily injury," "property damage" or "personal injury"; and
>
>     b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor *in the performance of "your work" to which the "written contract requiring insurance"* applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

(Doc. #1-4, at 24) (emphasis added). It also defines a "written contract requiring insurance":

> "Written contract requiring insurance" means that *part of any written contract or agreement under which you are required to include a person or organization as an additional insured* on this Coverage Part, provided that the "bodily injury" and "property damage" occurs and the "personal injury" is caused by an offense committed:
>
>     a. After the signing and execution of the contract or agreement by you;

- 4 -

      b.      While that part of the contract or agreement is in effect; and

      c.      Before the end of the policy period.

(Doc. #1-4, at 25) (emphasis added).

The excess liability policy defines an "insured" as follows:

      f.      Any other person or organization insured under any policy of the "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance *for whom you have agreed in a written contract executed prior to loss to provide insurance*. This insurance is subject to all the limitations upon coverage under such policy of "underlying insurance," and, the limits of insurance afforded to such person or organization will be:

          (i)      The difference between the "underlying insurance" limits and the minimum limits of insurance which you agreed to provide; or

          (ii)     The limits of insurance of this policy

      whichever is less.

(Doc. #1-5, at 12-13) (emphasis added). The scheduled underlying insurance refers to the CGL policy.

### *The Construction Agreement*

The construction agreement is a comprehensive contract between Thunder Basin and Earth Works that governed the work to be done on the new railroad track at the mine site. The agreement includes provisions mandating a standard of care to be undertaken by Earth Works, including the duty to independently verify all site

- 5 -

conditions.  The construction agreement also required that Earth Works maintain insurance policies covering Thunder Basin as an additional insured.

### *The Terms and Conditions document*

The terms and conditions document (the T&C) is a four-page document attached to a fax sent by Thunder Basin to Earth Works.  The fax transmittal sheet states that Thunder Basin requires the signed terms and conditions statement to enable a vendor to perform contract labor on the mine site.  On November 7, 2007, Earth Works printed the fax transmittal sheet and attachment, signed and dated the T&C on the line labeled "contractor," and faxed the combined paperwork back to Thunder Basin.  Thunder Basin did not sign the document.

The T&C lists a number of rights and obligations between two parties: a "seller," used interchangeably with "vendor" and "contractor," and a "buyer," defined as "the company designated as the 'Bill To' company on the face of this Purchase Order ('PO' or 'Contract')."  Section 11.1 of the T&C provides that "[i]f any service covered by this Purchase Order is performed on property controlled by Buyer, then prior to beginning the work or moving personnel or equipment onto the property, *Seller shall provide Buyer with certificates of insurance evidencing that Seller . . . ha[s] procured and shall maintain . . .the following insurance: . . . (3) Commercial General Liability with limits of not less than $2,000,000 . . . [and] shall name Buyer as an additional insured . . . ."* (emphasis added).  The T&C

- 6 -

further provides that "SELLER/CONTRACTOR AGREES TO THE ABOVE NOTED TERMS AND CONDITIONS THAT ARE A STANDARD PART OF BUYER'S PROCUREMENT OF GOODS AND SERVICES WHETHER SAID PROCUREMENT IS VERBAL; FAXED; E-MAILED; OR WEB/INTERNET TRANSMITTED/CONFIRMED."

## Discussion

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e).

Plaintiff brings this case based on diversity jurisdiction under 28 U.S.C. § 1332. "A district court sitting in diversity must apply the conflict of law rules for the state in which it sits." *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). In deciding choice of law questions for insurance cases, if the

further provides that "SELLER/CONTRACTOR AGREES TO THE ABOVE NOTED TERMS AND CONDITIONS THAT ARE A STANDARD PART OF BUYER'S PROCUREMENT OF GOODS AND SERVICES WHETHER SAID PROCUREMENT IS VERBAL; FAXED; E-MAILED; OR WEB/INTERNET TRANSMITTED/CONFIRMED."

## Discussion

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e).

Plaintiff brings this case based on diversity jurisdiction under 28 U.S.C. § 1332. "A district court sitting in diversity must apply the conflict of law rules for the state in which it sits." *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). In deciding choice of law questions for insurance cases, if the

insurance contract does not specify which state's law applies or if the policy insures risks located in a state other than Missouri, Missouri applies Section 193 of the Restatement (Second) of Conflict of Laws. *Curran Composites, Inc. v. Liberty Mut. Ins. Co.*, 874 F. Supp. 261, 264 (W.D. Mo. 1994). Under Section 193, Missouri courts will apply the law of the state where "the principal location of the insured risk" is located, unless another state has a more significant relationship to the transaction and the parties. Restatement (Second) of Conflict of Laws § 193 (1971). In this case, the work on the coal facility and the Bent 4 pad occurred in Wyoming, and the underlying accident occurred in Wyoming. Because Wyoming has the most significant relationship to this lawsuit, I apply Wyoming law to this diversity case.

Under Wyoming law, "[t]he interpretation and construction [of a contract] is done by the court as a matter of law." *Amoco Prod. Co. v. Stauffer Chemical Co. of Wyo.*, 612 P.2d 463, 465 (Wyo. 1980). Wyoming courts follow several tenets for the interpretation of insurance contracts:

> (1) words must be given their common and ordinary meaning, and courts may not torture policy language to create an ambiguity; (2) the parties' intention, ascertained from the policy language when viewed in the light of what the parties must reasonably have intended, receives primary consideration; (3) the policy must not be construed so strictly as to contradict the policy's general object; (4) courts may not rewrite lawful policy terms; (5) absent ambiguity, courts must enforce the policy according to its terms and not engage in construction; (6) if the policy is ambiguous, courts must construe the contract liberally in favor of the insured and strictly against the

- 8 -

insurer.

*Mena v. Safeco Ins. Co.*, 412 F.3d 1159, 1163 (10th Cir. 2005) (citing *Aaron v. State Farm Mut. Auto. Ins. Co.*, 34 P.3d 929, 933 (Wyo. 2001)).

As the policy language set out above makes clear, for the Earth Works CGL policy to cover the *Milonis* and *Salinis* claims against Thunder Basin, Thunder Basin would have to be an "additional insured." And to be an additional insured, Thunder Basin would have to be someone with whom Earth Works had entered into a "written contract requiring insurance." The excess liability policy would cover the claims against Thunder Basin if it was insured under the CGL policy and if Earth Works had agreed in a written contract to provide insurance. Thunder Basin argues that both the construction agreement and the T&C qualify as written agreements that Earth Works would provide insurance, which, Thunder Basin argues, means that it is an additional insured under both Travelers policies.

## A.      Declaratory Judgment Claims

1.      *Construction Agreement*

Section 12 of the construction agreement between Thunder Basin and Earth Works required Earth Works to provide and maintain commercial general liability and excess liability coverage, and to include Thunder Basin as an additional insured on those policies. Travelers argues that because the work on the Bent 4 pad was separate and distinct from the work encompassed by the construction

- 9 -

agreement, Thunder Basin was not afforded coverage for that additional work performed by Earth Works. Travelers also argues that this issue has been decided by the Wyoming court, and so Thunder Basin is collaterally estopped from arguing that coverage is mandated under the construction agreement or any other agreement.

Collateral estoppel bars relitigation of issues actually and necessarily involved in a prior action between the same parties. *Rino v. Mead*, 55 P.3d 13, 20 (Wyo. 2002). When determining whether collateral estoppel applies, courts examine four factors:

> (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* at 21 (quoting *Slavens v. Bd. of Cnty. Com'rs for Unita Cnty.*, 854 P.2d 683, 686 (Wyo. 1993)).

In the *Milonis* case, the Wyoming federal court granted Earth Works' motion for partial summary judgment and held that the construction agreement between Thunder Basin and Earth Works did not govern work done on the Bent 4 pad. Thunder Basin was a named defendant in that case and submitted a legal memorandum opposing Earth Works' motion. The arguments it raised there are

- 10 -

similar to many of those raised here – Thunder Basin contended the Bent 4 pad work was part of the construction agreement either through a change order or an amended contract, both of which were issued after the accident.  But the Court ruled, as a matter of law, that the Bent 4 pad work was done as part of the construction agreement.

Thunder Basin argues that collateral estoppel does not apply to the *Milonis* decision because that order is not a judgment on the merits and the issues are not identical.  The Supreme Court of Wyoming has held that

> [a] judgment on the merits does not require a determination of the controversy after a trial or hearing on controverted facts.  It is sufficient if the record shows that the parties might have had their controversies determined according to their respective rights if they had presented all their evidence and the court had applied the law.

*CLS v. CLJ*, 693 P.2d 774, 777 (Wyo. 1985) (quoting *Jefferson v. Greater Anchorage Area Borough, Alaska*, 451 P.2d 730, 732 (Alaska 1969)).  "Section 13 of the Second Restatement of Judgments . . . provides that 'for purposes of issue preclusion . . . final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003) (second alteration in original) (citation omitted) (quoting Restatement (Second) of Judgments § 13 (1982)); *cf. Delgue v. Curutchet*, 677 P.2d 208, 212 (Wyo. 1984) (applying Restatement (Second) of Judgments).  The test for finality is whether the

prior decision was "adequately deliberated and firm" or "avowedly tentative," and whether the parties were fully heard in the prior proceeding. *Dana*, 342 F.3d at 1323 (quoting Restatement (Second) of Judgments § 13, cmt. g).

The *Milonis* decision is a decision on the merits of this issue. The court decision was adequately deliberated and firm, and has entirely removed the issue from that case. As such, the decision qualifies as a judgment on the merits. The issue decided was also identical to that presented here: was Earth Works work on the Bent 4 pad done as part of the construction agreement? Although the *reason* the *Milonis* court considered this issue was different (i.e., whether Earth Works owed duties to the injured men because of the construction agreement), the issue adjudicated was the same. Thunder Basin was a party to the *Milonis* proceedings and fully exercised its opportunity to oppose that court's ruling. Thunder Basin is collaterally estopped from arguing that the construction agreement governs the work performed on the Bent 4 pad. The construction agreement cannot afford coverage for Thunder Basin as an additional insured.

2.     *Terms and Conditions Document*

Thunder Basin contends that the T&C is a written contract requiring insurance that satisfies the Travelers policy requirements. The Wyoming court in *Milonis* did not consider the T&C, as neither party raised it there. Travelers argues that the decision nevertheless precludes Thunder Basin's claim for coverage,

because Thunder Basin could have raised the applicability of the T&C. Collateral estoppel only precludes litigation of issues necessary to the outcome of the prior case. *See Hansuld v. Lariat Diesel Corp.*, 245 P.3d 293, 300 (Wyo. 2010). As noted above, the underlying issue decided in *Milonis* was whether the construction agreement imposed duties on Earth Works to Andrew Milonis. But unlike the construction agreement, the T&C contains nothing that even arguably could establish specific standards of care to a worker such as Mr. Milonis. Thus, Thunder Basin had no reason to raise the existence of the T&C in *Milonis*, and collateral estoppel will not bar its application here.

Travelers also argues that the T&C is unenforceable as a contract because it lacks material terms, has no mutuality of obligation, is so indefinite that no party could intend for it to be binding, and was intended to be incorporated by reference into separate written purchase order contracts.

In determining parties' intent towards contractual formation or interpretation, Wyoming courts use an objective approach. *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 231 (Wyo. 2000). The basic elements of a contract are offer, acceptance, and consideration. *Prudential Preferred Properties v. J&J Ventures, Inc.*, 859 P.2d 1267, 1272 (Wyo. 1993). When an issue exists as to a contract's existence or terms, and the evidence is susceptible to more than one inference, it is

the duty of the fact-finder to determine whether a contract was formed. *Roussalis*, 4 P.3d at 232.

Offer and acceptance occur when each party manifests its intent to be bound. *Bouwens v. Centrilift*, 974 P.2d 941, 946 (Wyo. 1999). Travelers argues that the parties could not have intended to be bound, because the transmittal sheet references future contract labor that would incorporate the T&C by written reference and because "Buyer" is left undefined. Travelers's first argument fails because the T&C expressly applies to future verbal contracts. *See Cheek v. Jackson Wax Museum, Inc.*, 220 P.3d 1288, 1293 (Wyo. 2009) (upholding open-ended contract between real-estate agent and landlord regarding commissions on future rental contracts). That "Buyer" was defined by reference to a missing portion of the contract (a Purchase Order that does not exist) likewise makes no difference. All the undisputed evidence shows that the parties understood Thunder Basin to be the Buyer of and Earth Works to be the Seller of the services. Thunder Basin faxed a transmittal sheet requiring Earth Works to sign the attached T&C "to enable a vendor to perform contract labor on the mine site."[3] Earth Works returned

---

[3] Travelers argues that the parol evidence rule prohibits consideration of the transmittal sheet. However, the parol evidence rule "does not prohibit use of extrinsic evidence of the circumstances surrounding the execution of the [contract] to interpret the meaning of its terms." *Mullinix LLC v. HKB Royalty Trust*, 126 P.3d 909, 920 (Wyo. 2006) (internal quotations omitted).

- 14 -

a signed copy by fax to Thunder Basin.  These actions manifest the mutual intent of the parties to be bound by the T&C and thereby constitute offer and acceptance.

The T&C does not fail for want of consideration.  Consideration may take the form of rights, obligations, and the creation or modification of a legal relation.  *Moorcroft State Bank v. Morel*, 701 P.2d 1159, 1162 (Wyo. 1985).  The T&C and its email cover page contain numerous terms, including Thunder Basin's obligation to subscribe to the highest level of business practices, the right of Earth Works to enter the mine site to perform contract labor, and the requirement that Earth Works name Thunder Basin as an additional insured, all of which qualify as consideration.

Travelers argues in one sentence that the T&C cannot form a contract because it is missing the following material terms: price, quantity, date of performance, and goods/services to be furnished.  "The question of what is an essential term is often a question of fact" relegated to the fact-finder.  *Roussalis*, 4 P.3d at 232 (quotation and citation omitted).  The T&C establishes rights and obligations related to future contracts between Earth Works and Thunder Basin.  While terms like price and quantity may be material to those other contracts, there is no evidence that such terms are material to the T&C, which would apply to any future contract, regardless of that contract's specific quantity and price terms.

Travelers also argues that the T&C fails for want of mutuality of obligation because the T&C does not guarantee a minimum amount of work and grants Buyer

- 15 -

the right to engage the services of other contractors. However, Wyoming courts refuse to analyze contracts for mutuality of obligation, as they view the inquiry as one of adequacy of consideration. *See Jackson Hole Builders v. Piros*, 654 P.2d 120, 122 (Wyo. 1982) ("If the requirement of consideration is met, there is no additional requirement of . . . mutuality of obligation.") (quoting Restatement (Second) of Contracts, § 79 (1981)) (internal quotation marks omitted). Because adequate consideration exists, I decline to analyze the T&C for mutuality of obligation. Travelers fails to establish a genuine issue of material fact as to the contractual validity of the T&C agreement.

The T&C is a written agreement that requires Earth Works to name Thunder Basin as an additional insured on its CGL policy.[4] Earth Works signed the T&C on November 7, 2007, and the relevant injuries occurred on May 31, 2008. The T&C does not have an expiration date and the Travelers policy period ended February 1, 2009. Travelers has failed to establish that a genuine issue of material fact exists as to whether the underlying injuries occurred while the T&C was in effect. Thus, the T&C qualifies as a "written contract requiring insurance."

---

[4] Because the excess policy applies to any insured under the CGL policy, if Thunder Basin is an additional insured under the CGL policy, it follows that it is an additional insured under the excess policy.

I also reject the arguments that fact issues remain regarding whether the Bent 4 pad work was performed pursuant to the T&C.  As discussed above, the T&C applied to all future contracted work, whether written or verbal.  Thunder Basin's project manager has given conflicting testimony about whether the Bent 4 work was performed pursuant to the construction agreement or on a labor and materials basis, and there was a post-accident change order that was discussed in the Wyoming case.  Earth Works' president testified that the Bent 4 pad work was not performed pursuant to the construction agreement.  But the Wyoming court has already held that the Bent 4 pad work was not performed pursuant to the construction agreement, as a matter of law.  These witnesses' beliefs about how the documents should be applied to the facts of the case are not determinative on this legal question, which has already been decided.

Because the Terms and Conditions document required Earth Works to provide insurance, Thunder Basin became an additional insured.  Thunder Basin is entitled to summary judgment on its claims for declaratory relief in Counts 6 and 8.

**B.     The Breach of Contract Claims**

In Counts 4 and 5, Thunder Basin alleges that Travelers Indemnity breached its contractual obligation to defend under the CGL policy in the ongoing Milonis and Salinas actions.  Under Wyoming law, so long as the claim rationally falls within policy coverage, an insurer must provide a defense.  *Lawrence v. State Farm*

*Fire & Cas. Co.*, 133 P.3d 976, 980 (Wyo. 2006).  This obligation is an independent consideration in liability insurance, and one that is invoked by any alleged claim "potentially covered under the policy."  *Id.*

Both the Milonis and Salinas complaints allege that Thunder Basin contracted with Earth Works to construct the Bent 4 pad and that negligence attributable to the construction of the pad caused the plaintiffs' bodily injuries.  These claims are covered under the policies, and it is undisputed that Travelers Indemnity denied coverage to Thunder Basin under the CGL policy.  By denying coverage, Travelers Indemnity breached its contractual duty to defend.  Thunder Basin is entitled to summary judgment on liability under Counts 4 and 5 as a matter of law.

Although I find in favor of plaintiff on liability, a question of fact yet remains as to the remedy to which Thunder Basin is entitled.  Until this issue is resolved, I cannot enter judgment on this matter.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants Travelers Indemnity Company of America and the Travelers Property and Casual Company of America for summary judgment [# 85] is denied.

**IT IS FURTHER ORDERED** that the motion of plaintiff Thunder Basin Coal Company, L.L.C. for summary judgment [# 103] is granted to the extent that

plaintiff is entitled to the declaratory relief sought in Counts VI and VIII and as to liability only in Counts IV and V.

**IT IS FURTHER ORDERED** that the Court will hold a telephone conference on **Friday, September 27, 2013 at 11:00 a.m.** discuss a schedule for trial of the remaining issues.  Plaintiff's counsel is responsible for placing the call and having all necessary counsel on the line before calling chambers at (314)244-7520.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of August, 2013.