IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THUNDER BASIN COAL COMPANY, L.L.C.<br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; THE TRAVELERS INDEMNITY COMPANY OF AMERICA; and THE TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA<br><br>Defendants. | No.  4:12-cv-00231-CDP |

## TRAVELERS' MOTION FOR CLARIFICATION

Travelers respectfully requests clarification of the Court's August 27, 2013 Order granting partial summary judgment on Thunder Basin's breach of contract claims.  Even if Thunder Basin is an additional insured under the policies, there are still genuine issues of material fact as to whether Travelers breached its duties of defense and indemnity.  The policies only cover claims filed against Thunder Basin for damage caused by *Earth Work's negligent performance* of its work on the crane pad.  The claims filed against Thunder Basin in the Wyoming litigation, however, were based on *Thunder Basin's own, independent negligence*.  Such claims are not covered by the policies, and Travelers can only be liable for refusing to defend and indemnify covered claims.

Additionally, Travelers requests that this Court clarify that another breach of contract issue remains: Whether there is any indemnity and defense coverage still available under the policies at issue?  The T&C requires $2,000,000 in coverage, and Travelers has exhausted these limits by making substantial settlement payments.  Importantly, once Travelers has exhausted all

available insurance, it no longer has a duty to defend an insured.

Finally, there are two related points that the Court's order did not resolve which Travelers requests the court to identify as triable issues. These issues are: (1) Did Thunder Basin comply with the conditions precedent to obtaining coverage including providing the notice of a suit against it promptly? (2) What amounts of Thunder Basin's alleged damages have already been paid by Defendants Zurich and National Union pursuant to the settlement those defendants have entered into with Thunder Basin? Travelers respectfully requests clarification of the Court's order to denominate these additional issues as ones which must be resolved by trial.

### A. The scope of coverage is defined by the additional insured endorsement.

Based on its finding that Thunder Basin is an additional insured, this Court addressed Thunder Basin's claims for breach of contract in light of Travelers' failure to provide a defense to Thunder Basin in *Milonis* and *Salinas II*. Although Travelers respectfully disagrees with this Court's ruling on the declaratory judgment claims for the reasons stated in its Motion for Reconsideration, it requests clarification of the Court's liability finding on Thunder Basin's breach of contract claims.

The specific ruling on which Travelers requests clarification is set forth on page 18 of the Court's Memorandum and Order:

> Both the *Milonis* and *Salinas* complaints allege that Thunder Basin contracted with Earth Works to construct the Bent 4 pad and that negligence attributable to the construction of the pad caused the plaintiffs' bodily injuries. These claims are covered under the policies, and it is undisputed that Travelers Indemnity denied coverage to Thunder Basin under the CGL policy. By denying coverage, Travelers Indemnity breached its contractual duty to defend. Thunder Basin is entitled to summary judgment on liability under Counts 4 and 5 as a matter of law.

Two documents are relevant to the analysis that follows: the T&C and the CGL policy. The T&C provides in relevant part:

> 10.1 <u>General Indemnity</u>.  Except for claims, demands or suits *attributable to Buyer's sole negligence*, Seller shall, to the extent permitted by law, indemnify, defend, and save harmless, Buyer . . . from and against any and all claims, demands or suits . . . which may be brought against them . . . .

*See* Terms and Conditions, attached hereto as Exhibit A, at 2 (emphasis added).  Thus, there is no requirement for Earth Work to indemnify or defend Thunder Basin for claims filed against it based on its sole negligence.[1]  Consequently, the scope of liability insurance to be provided under section 11.1 of the T&C does not extend to claims filed against Thunder Basin for its *sole negligence*.  *See* Ex. A, at 3.

The additional insured endorsement to the CGL policy provides in relevant part:

> 1. WHO IS AN INSURED—(Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
> a) Only with respect to liability for "bodily injury," "property damage" or "personal injury"; and
>
> b) *If, and only to the extent that, the injury or damage is caused by the acts or omissions of you or your subcontractor in the performance of "your work"* to which the "written contract requiring insurance" applies.  *The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.*

CGL Policy, Doc. No. 1-4, at 24 (emphasis added).  The italicized language shows that the CGL,

---

[1] On this point, Travelers directs this Court to a pending action in Campbell County, Wyoming, involving Thunder Basin, Earth Work, and The Industrial Company of Wyoming, Inc.  *See* Summary Judgment filings in Civil Action No. 33455, attached hereto as Exhibit B.  One of the issues that has already briefed in the Campbell County case is whether the T&C imposes a duty of indemnity upon Earth Work.  *Id.*  Such a finding is material to this litigation, in that the T&C's insurance provision (11.1) requires the Seller to furnish the Buyer with CGL coverage "for the indemnity provision of this Purchase Order."  *See* Ex. A, at 3.  Stated another way, the Seller's insurance must only cover its duty to indemnify the Buyer.  Therefore, if Earth Work has no duty to indemnify Thunder Basin, then Travelers has no obligation to provide liability insurance.

vis-à-vis the additional insured endorsement, covers Thunder Basin for damages caused by Earth Work's negligence—but not for its own, independent negligence. Put another way, the scope of coverage does not include all claims filed against Thunder Basin, it only includes claims alleging that Thunder Basin is vicarious liable for Earth Work's negligence.

### 1. *The Endorsement Only Covers Vicarious Liability.*

In *Engineering & Construction Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695 (Minn. 2013), the Supreme Court of Minnesota examined the exact same additional insured endorsement, and Travelers believes the analysis therein correctly illustrates scope of coverage afforded to an additional insured.[2] The operative facts of *Bolduc* are as follows.

Engineering & Construction Innovations, Inc. ("ECI") contracted to install "a lift station and force main access structures" at specified locations as part of a larger project to install underground sewer pipeline. *Id.* at 698. In order to excavate pits to construct the access structures without danger of the walls of the pits collapsing, ECI subcontracted with L.H. Bolduc Company, Inc. ("Bolduc") to build "cofferdams," which provide lateral support. *Id.* at 698–99. The subcontract provided that ECI, not Bolduc, was not responsible for determining where to drive the cofferdams. *Id.* at 699. The subcontract also required Bolduc to indemnify ECI and maintain certain liability insurance for ECI. *Id.* at 699–700. Bolduc had a CGL policy with Travelers, and that policy carried the exact same additional insured endorsement as the one at

---

[2] Travelers does not mean to imply that *Bolduc* is controlling authority, but merely offers the case as a helpful discussion on a critical issue in this case. The *Bolduc* decision is also instructive because Minnesota, like Wyoming, prohibits contracts indemnifying a party for its own negligence. *Compare* Minn. Stat. § 337.02 *with* Wyo. Stat. § 30-1-131. *See also Northwinds of Wyoming v. Phillips Pet. Co.*, 779 P.2d 753, 758–59 (Wyo. 1989).

4

issue in the case at bar.³

At some point, it was discovered that Bolduc damaged a part of the pipe in the course of building a particular cofferdam. *Id.* at 700. As specified in its subcontract, ECI had provided the template and markings showing where Bolduc was to drive the cofferdams. *Id.* ECI incurred substantial expense to repair the pipe and sought reimbursement for the property damage from Bolduc's insurer, Travelers. *Id.* at 700–01. Travelers declined to reimburse ECI based on its determination that the claim did not fall within coverage provided by the additional insured endorsement, as ECI— not Bolduc—was the cause of the property damage. *Id.* at 701.

ECI then sued Bolduc and Travelers, alleging negligence against Bolduc and breach of insurance contract against Travelers. *Id.* By stipulation, the claims were bifurcated, and only the negligence claim was submitted to the jury. *Id.* The jury found that Bolduc was not negligent and awarded ECI no damages. *Id.* at 701–02.

After the trial, the parties filed competing motions for summary judgment on ECI's breach of contract claim against Travelers. *Id.* at 702. Travelers asserted that ECI's coverage under the additional insured endorsement was limited to damage caused by an act or omission of Bolduc and that, because a jury had found that Bolduc was not negligent, there was no coverage.

---

³ WHO IS AN INSURED—(Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:

    a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and

    b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

*Id.* at 700. For the sake of completeness, Travelers notes that the endorsement's definition of a "written contract requiring insurance" is also identical, though that clause was not contested in *Bolduc*.

5

*Id.* ECI maintained that because Bolduc undisputedly struck the pipe in the course of building the cofferdam, "the damage was, by definition, caused by Bolduc's 'acts or omission.'" *Id.* In essence, ECI argued that Travelers' interpretation "rewrote the policy to include coverage only for Bolduc's '*negligent* acts or omissions.'" *Id.* (emphasis in original).

The trial court granted summary judgment to Travelers finding that "ECI was not entitled to coverage as an additional insured because ECI was only entitled to coverage for damage caused by Bolduc and 'not for damage caused by the independent acts or omissions of ECI.'" *Id.* at 703.  The court of appeals reversed, and the Supreme Court of Minnesota granted Travelers' petition for review. *Id.*

In reversing the court of appeals, and ultimately affirming the trial court, the Supreme Court of Minnesota set forth an analytical framework to determine whether the conditions for additional-insured coverage in the policy at issue are met.  First, the court held that ECI was "an additional insured only with respect to liability for property damage." *Id.* at 707.  Second, the court held that, in order to be covered, ECI's liability for such damage "must have been caused by acts or omissions of Bolduc." *Id.*  Third, the court held that "ECI cannot be an additional insured with respect to liability caused by 'the independent acts or omissions of ECI.'" *Id.*  After a vigorous analysis, the court concluded that the additional insured endorsement only provides coverage if ECI is vicariously liable for property damage caused by Bolduc's acts or omissions. *Id.* at 707–10.

### 2. *No Vicarious Liability Claims Were Filed Against Thunder Basin.*

Travelers is aware that this Court has previously rejected another insurer's (Zurich) argument that additional insured coverage is limited to situations involving vicarious liability. (Doc. No. 83, at 6–9).  However, Travelers believes that this finding necessarily rested upon the specific language in Zurich's policy, which is different than the language in Travelers' additional

6

insured endorsement.

  *a.*  *Travelers' Additional Insured Endorsements is Materially Different.*

Comparing the two provisions side-by-side, and "reading each provision in light of all the others to find the plain and ordinary meaning of the words," it is clear that Travelers' additional insured endorsement says what Zurich's meant to say:

<u>Zurich's endorsement</u> provides, in pertinent part:

> A. Section II – Who Is An Insured is amended to include as an insured any person or organization who you are required to add as an additional insured on this policy under a written contract or written agreement.
>
> B. The insurance provided to the additional insured person or organization applies . . . only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>  1. Your acts or omissions; or
>
>  2. The acts or omissions of those acting on your behalf . . . .

(Doc. No. 36-5, at 18).

<u>Travelers' endorsement</u> provides, in pertinent part:

> 1. WHO IS AN INSURED—(Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
>  a) Only with respect to liability for "bodily injury," "property damage" or "personal injury"; and
>
>  b) If, and only to the extent that, the injury or damage is caused by the acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

(Doc. No. 1-4, at 24).

7

At the threshold, Thunder Basin is insured "only with respect to liability for bodily injury" and "only to the extent that [such] injury . . . is caused by the act or omissions of [Earth Work.]" If Thunder Basin were directly liable to the Wyoming plaintiffs, coverage would be properly denied under the "independent acts or omissions" prong of subsection (b). To be covered, therefore, Thunder Basin must be vicariously liable due to Earth Work's wrongful acts. As this Court is aware, Wyoming law (1) does not impose vicarious liability on a premises owner for the wrongful acts of his contractors,[4] and (2) does not allow a plaintiff to hold one defendant liable for another defendant's fault.[5]

> b. *All of the Claims Allege Direct Liability Based on Thunder Basin's Own Negligence.*

The operative complaints in *Milonis* and *Salinas II* demonstrate that the claims filed against Thunder Basin are not based on Earth Work's negligence, nor are they based on theories of vicarious liability. Rather, they are based upon Thunder Basin's own, independent negligence. By way of example, the amended complaint in *Milonis* alleges, *inter alia*, that:

> 33. Thunder Basin injected itself into the project by contracting, planning, coordinating and/or assigning project-related tasks such that Thunder Basin effectively became the general contractor/construction manager of the overall project.
>
> 34. Examples of Thunder Basin's activities as general contractor/construction manager include removing all of the earthwork associated with the crane lifting pad from the scope of the TIC–Thunder Basin contract, and assigning at least a portion of

---

[4] *See, e.g., Jones v. Chevron U.S.A.*, 718 P.2d 890, 899 (Wyo. 1986) ("[I]f the owner maintains control over the work and exercises that control negligently, he can be directly liable to the employee for his own negligence. Rather than imposing vicarious liability in these cases, it is better to hold the contractor and the owner directly responsible for their own fault. The contractor will pay via worker's compensation and the owner through the tort system.")

[5] Wyo. Stat. § 1-1-109(e) ("Each defendant is liable only to the extent of that defendant's proportion of the total fault determined . . . .").

8

>that work to EWS; coordinating and planning with multiple parties, including Lampson, EWS and TIC, to ensure that the railroad activities at the mine were not negatively affected by the construction of the Hi-Light Train Load-out facility; and engaging a geotechnical engineer to determine ground bearing capacity and transmitting that information to Lampson and others.
>
>55.    At the time and place of the events described herein, Thunder Basin breached the duty of care through, among other things, the following acts and omissions:
>
>. . .
>
>e.    failing to communicate and/or ensure that EWS had necessary information, such as the requirement that 12 inches of fill be placed underneath the wooden mats;
>
>. . .
>
>g.    failing to exercise reasonable care in the performance of its duties as a general contractor/construction manager;

*See* Amended Complaint, No. 2:11cv199-ABJ (Jan. 3, 2012), attached as Exhibit C. These allegations, and many others, are based on Thunder Basin's own, independent negligence—they are not allegations of derivative or vicarious liability based on Earth Work's negligence. As the case was litigated, it became clear that Thunder Basin (1) promised to engineer the site and negligently failed to do so; (2) improperly offered to do a "cut and fill" for the Bent 4 pad site; and (3) decided that the pad site could support the crane when it had not investigated the site; and (4) represented that the foundation had been checked on a "dry run" and passed the test for adequacy when it had not. Furthermore, in *Milonis*, Earth Work settled all of its several liability to the plaintiffs and received a release. William Antes Aff. ¶ 11 (Oct. 14, 2013) attached hereto as Exhibit E.

Similarly, the claims in *Salinas II* are based on Thunder Basin's independent acts and omissions. *See* Complaint, No. 2:12cv106-ABJ (May 24, 2012), attached as Exhibit D. Indeed, Thunder Basin is the sole defendant *Salinas II*. There are no allegations that Thunder Basin

9

negligently hired or negligently supervised Earth Work.  In *Salinas I*, Earth Work settled all of its several liability to the plaintiffs.  When Thunder Basin was named in *Salinas II* it was because Thunder Basin was being sued for its sole negligence.

Based on the foregoing, and assuming that this Court denies reconsideration and reiterates its ruling that Thunder Basin is an additional insured, Travelers respectfully requests that this Court clarify its holding with regard to what claims in *Milonis* and *Salinas II* are actually covered and limit that holding to claims asserting derivative or vicarious liability.

**B.    Even if the T&C was a written contract requiring insurance, all available insurance has been exhausted.**

Assuming that the T&C does satisfy the additional insured endorsement, another issue is whether the limit of insurance provided under that endorsement has been exhausted by payments already made by Travelers in the Wyoming litigation.  This issue was not briefed, but to the extent that the Court has ruled on Thunder Basin's breach of contract claims, Travelers requests that the Court clarify that the policies at issue do not provide unlimited indemnity and defense.

The additional insured endorsement provides, in relevant part:

> 2.    The insurance provided to the additional insured by this endorsement is limited as follows:
>
> a)    In the event that the Limits of Insurance of this Coverage Part shown in the Declarations exceed the limits of liability required by the "written contract requiring insurance," the insurance provided to the additional insured shall be limited to the limits of liability required by that "written contract requiring insurance."  *This endorsement shall not increase the limits of insurance described in Section III—Limits Of Insurance.*

CGL Policy, Doc. No. 1-4, at 24 (emphasis added).

Although the T&C requires Earth Work to carry $2,000,000 in liability insurance, Earth Work's primary (CGL) policy provides only $1,000,000 in coverage.  *See* T&C, Ex. A, at 3;

10

CGL Policy, Doc. No. 1-4, at 6.  The excess (umbrella) policy provides an additional $4,000,000 in coverage, but the additional insured endorsement limits coverage to the amount set out in the "contract requiring insurance," which is $2,000,000.  Umbrella Policy, Doc. No. 1-5, at 12–13.  Therefore, Travelers is required to indemnify Thunder Basin only up to $2,000,000, with the primary policy paying $1,000,000 and the excess paying $1,000,000.  The $2,000,000 limit of insurance has been entirely exhausted by Travelers' payments in the *Salinas I* and *Milonis* cases.  Antes Aff. ¶¶ 12–14, Ex. E.  Therefore, there is no remaining indemnity coverage available under the additional insured endorsement.

Furthermore, the primary policy and the excess policy cuts off Travelers' duty to defend once it has paid the applicable limit of insurance toward judgments or settlements.  *See* CGL Policy, Doc. No. 1-4, at 8 ("Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C."); Umbrella Policy, Doc. No. 1-5, at 8 ("Our right and duty to defend [any covered claim] end[s] when we have used up the 'applicable limit of insurance' in the payment of judgments or settlements.").  Travelers exhausted the limits of insurance on March 6, 2012.  Antes Aff. ¶ 14, Ex. E.  Accordingly, Travelers' duty to defend Thunder Basin did not continue beyond that date, and there is no coverage for any indemnity claim which Thunder Basin has made due to the exhaustion of the limits in Travelers' primary policy.

### C.     There are two additional unresolved issues that should be tried.

Travelers respectfully requests that the Court identify the following issues as ones which must be resolved at trial:

> **1.     Did Thunder Basin comply with the conditions precedent in order to obtain insurance coverage under the Travelers policy?**

11

This issue was controverted in the pleadings when Travelers' denied the allegations of paragraphs 46 and 70 of Thunder Basin's Amended Complaint. (Doc. Nos. 44 and 52). The parties did not address this issue in their motions for summary judgment. Neither did the Court's order. Therefore, the issue remains unresolved. Travelers specifically asserts that Thunder Basin did not provide the notice of the underlying litigation required by the additional insured endorsement until June 21, 2012, at the earliest when, for the first time, Thunder Basin claimed a right to a defense under the November 7, 2007 T&C. *See* Letter from Thunder Basin Wyoming Counsel to Earth Work Wyoming Counsel dated June 21, 2012, attached hereto as Exhibit F; William Antes Aff. ¶ 7, Ex. E.

> **2.     What amount of Thunder Basin's alleged damages have been paid by Defendants Zurich and National Union as part of the settlement those parties have made with Thunder Basin?**

This issue directly bears on Thunder Basin's breach of contract claim because Travelers has no duty to defend an insured once it has paid policy limits to satisfy covered claims. *See* CGL Policy, Doc. No. 1-4, at 8 ("Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C."); Umbrella Policy, Doc. No. 1-5, at 8 ("Our right and duty to defend [any covered claim] end[s] when we have used up the 'applicable limit of insurance' in the payment of judgments or settlements.").

In addition to clarifying its Order regarding the scope of coverage and the exhaustion of policy limits as briefed above, Travelers asks the court to clarify that these two particular issues remain unresolved and should be set for trial.

## CONCLUSION

For all of the foregoing reasons, Travelers respectfully requests that this Court clarify its August 27, 2013 summary judgment Order to find that:

(1) Travelers is liable for breach of its duty to defend and indemnify Thunder Basin only for claims asserting derivative or vicarious liability;

(2) all available insurance has been exhausted by settlement payments in *Salinas I* and *Milonis*, and Travelers has no further duty to defend in *Salinas II*; and

(3) there are other issues which must be tried by the parties including whether Thunder Basin met the conditions precedent to qualify for insurance coverage and what amount of Thunder Basin's alleged damages have been paid by settling Defendants Zurich and National Union.

ARMSTRONG TEASDALE LLP

BY:   /s/ *Jonathan R. Shulan*
Jonathan R. Shulan, #65426MO
7700 Forsyth Blvd., Suite 1800
Saint Louis, Missouri 63105
314.621.5070
314.612.2322 (facsimile)
jshulan@armstrongteasdale.com

Laurence R. Tucker, *Pro Hac Vice*
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (facsimile)
lrtucker@armstrongteasdale.com

*ATTORNEY FOR THE TRAVELERS INDEMNITY COMPANY OF AMERICA AND THE TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

   /s/ *Jonathan R. Shulan*